IN THE

# SUPREME COURT OF APPEALS

OF

# VIRGINIA.

---

## Wytheville.

NORFOLK & WESTERN RAILROAD CO. v. ANDERSON.

June 15th, 1893.

90    1
90  142
90    1
110  779

1. CARRIERS—*Construction of Contract—Ejection of Passenger—Case at bar.*—
   Ticket provided that when presented to conductor, passenger should
   sign his name thereto, and "otherwise identify" himself as original
   purchaser thereof. Passenger offered to sign ticket, which offer con-
   ductor refused, and ejected him from train for refusing to pay fare.

HELD:
> Conductor not entitled to require passenger to "otherwise identify"
> himself, and defendant company was liable in damages for the
> expulsion.

2. IDEM—*Exemplary Damages.*—Where in such a case the defendant com-
   pany subsequently ratified conductor's acts, plaintiff is entitled to exem-
   plary damages.

3. IDEM—*Measure of Damages.*—Amount of defendant company's liability
   must depend on the circumstances, and be left largely to discretion of
   the jury, whose verdict will not be disturbed unless it evinces passion,
   prejudice, or corruption.

4. PRACTICE AT COMMON LAW—*Waiver of Objection.*—Where trial court ruled
   that certain admitted evidence was illegal and promised to hear later, a

VOL. XC—1

motion to exclude it, and no exception was taken, and there was a failure to call the court's attention before verdict, such failure amounts to a waiver of the objection.

5. CASES DISTINGUISHED.—*Railroad Co.* v. Wysor, 82 Va., 250, compared with and distinguished from case at bar.

Error to judgment of circuit court of Nansemond county, rendered April 11, 1892, in an action of trespass on the case, wherein W. M. Anderson was plaintiff, and the Norfolk and Western Railroad Company was defendant. The action was brought to recover damages for the alleged wrongful expulsion of the plaintiff from one of the defendant's passenger trains. There was a verdict and judgment for the plaintiff for two thousand dollars damages and costs.

The declaration states in substance, and the evidence shows, that on the 17th of March, 1890, the plaintiff purchased of the defendant company a thousand mile or commutation ticket for travel on its road; that attached to the ticket, and forming part of it, were certain printed conditions, the first and second of which were in these words: "1st. That this ticket is good only for the person in whose name it is issued, and shall be taken up and forfeited if presented by any other person. 2d. That when requested by the conductor, at the time the ticket is presented for passage, or the station baggage agent, when presented for the purpose of having baggage checked, I will sign my name in the presence of either on the back of the highest numbered coupons required for the trip, and will otherwise identify myself as the original purchaser of the ticket."

At the bottom of the printed conditions (fourteen in number), the plaintiff was required to sign his name, which he did in the presence of the attesting witness, W. C. Masi, city ticket agent of the defendant company at Norfolk.

On the 24th of May following, the plaintiff took passage on one of the defendant's passenger trains, leaving Norfolk in the morning, intending to go to Suffolk, a point on the defendant's road about twenty miles west of Norfolk, and thence, that

afternoon, to Richmond *via* Petersburg.   Before entering the
train he presented his ticket, then containing unused coupons
for four hundred miles of travel, to the defendant's baggage
agent at Norfolk, who, without raising any question as to his
identity, checked his baggage through to Richmond.

The plaintiff at the time was a travelling salesman for the
A. B. C. Chemical Company.

When the conductor came around to collect fares, after the
train left Norfolk, the plaintiff presented him his ticket, from
which to extract the necessary coupons for the travel between
Norfolk and Suffolk.   The conductor asked if the signature,
above mentioned, was the plaintiff's, to which the latter replied
that it was.   But he refused to recognize the ticket, unless the
plaintiff would identify himself.   The latter then offered to
sign his name as stipulated.   But the conductor refused to
accept that as evidence of identity, saying to the plaintiff that
if he signed his name he would, of course, sign the name that
was on the ticket, and, besides, that he (the conductor) was no
judge of handwriting.   The plaintiff then remarked that he
was a stranger in that section; that he knew no one on the
train, and that he had no other means of identifying himself
than by writing his name.   The conductor still refused to
accept such evidence, and inquired of the plaintiff if he had
any letters on his person addressed to himself.   To this the
plaintiff replied that he had not; that his mail was in his bag-
gage, which had been checked through to Richmond.   The
conductor then insisted that he go into the baggage car and
get out of his baggage any letters therein, which he declined
to do as unreasonable, as the train was then running at its
usual rate of speed.

The conductor next inquired if he had in his pocket an
order-book, such as drummers usually carry, whereupon the
plaintiff produced one, upon the fly-leaf of which was dimly
written in pencil: " E. W. Wells, 248 Halifax St," and on the
same page, below Wells' name, was the following: " 709 E.

Clay street, Anderson," the latter being also written in pencil, and more dimly. It does not appear, however, that the conductor saw, or had his attention called to, the last name, or that the plaintiff himself knew at the time it was there. In fact, he says he did not. The conductor, upon seeing Wells' name, inquired how it came to be there, to which the plaintiff answered that he had copied it from the city directory of Petersburg, as the name of a person he wished to see; whereupon the conductor took up the plaintiff's ticket, and told him he would have to pay fare. To this the latter replied that he would not pay fare, and demanded a receipt for his ticket, which the conductor at first refused to give unless he would pay fare. Before he took up the ticket, the conductor said to the plaintiff: " If you will return this ticket to the 'scalper' from whom you got it, he will no doubt refund you your money."

Meanwhile the train was nearing Suffolk. " When the train stopped at the depot," says the plaintiff in his testimony, " I kept my seat, which was next to the window, and when the train was about ready to start, the conductor came to the window and told me he could not carry me any further, and that I must get off. I told him I would not get off, and that I would stay on the train until I got a receipt for my ticket. He then told me if I would come into the office in the depot, he would write me a receipt. I went in, and he wrote a receipt in the name of E. W. Wells, seeing which I told him that was not my name. He answered that was the name he knew me by, and that he had every reason to believe it was my name. I then turned to the freight agent, telegraph operator, or some other employee, who was standing by, and asked him to witness that I protested that that was not my name, but he said he would have nothing to do with it. By that time the conductor had boarded the train, and the train pulled out."

The plaintiff then goes on to say that he transacted his business that day in Suffolk, and took the evening train for Richmond, paying his fare.

Soon after the plaintiff's arrival in Richmond the secretary and treasurer of the chemical company reported the occurrences just mentioned to the defendant's passenger agent in Richmond, who in turn communicated on the subject with the general passenger agent at Roanoke. These officers, however, although assured that the plaintiff's ticket had been wrongfully taken up—that is, that he was the *bona fide* purchaser of the ticket, as he had represented to the conductor, refused to return it unless the plaintiff would surrender the conductor's receipt, which he declined to do. Indeed, the general passenger agent ultimately went further, for in his letter to the plaintiff's attorney he wrote as follows:

" Dear Sir,—Yours of yesterday, requesting that thousand-mile ticket bearing name of W. M. Anderson, lifted by a conductor of this road, be sent to you, is received. I regret that I must decline this request. The conditions of the contract under which this ticket was sold having been violated, the right to use the same for transportation has been forfeited."

At the trial there was little or no material conflict in the evidence. The foregoing is the substance of the case.

*George S. Bernard* and *W. H. Mann,* for plaintiff in error.

*Jackson Guy* and *E. E. Holland,* for defendant in error.

LEWIS, P., (after stating the case) delivered the opinion of the court.

In determining whether the judgment is right or not, it is important to observe, in the first place, what the contract between the parties was. Its language is that " when requested by the conductor at the time this ticket is presented for passage. * * I (the purchaser of the ticket) will sign my name in the presence of the conductor on the back of the highest numbered coupons required for the trip, and will otherwise

identify myself as the original purchaser of the ticket." This means that the person presenting the ticket will identify himself when identification is required, first, by signing his name, and, secondly, in any other manner that may be reasonably required. It is not that he will sign his name if that particular mode of identification is requested by the conductor, but that he will do so whenever called upon by the conductor to identify himself. This was evidently the intention of the parties, and the words employed are not inconsistent with such intention.

Assuming this to be the true construction of the contract, we are of opinion that the plaintiff is entitled to recover.

As was said in *R., F. & P. R. R. Co.* v. *Ashby*, 79 Va., 130, " the carrier's duty is to carry his passengers safely and respectfully, and if he entrusts this duty to his servants, the law holds him responsible for the manner in which they execute the trust." The same principle has been repeatedly affirmed by the Supreme Court of the United States. " A common carrier," says that court, " undertakes absolutely to protect his passengers against the misconduct of his own servants engaged in executing the contract," and " whether the act of the servant be one of omission or commission, whether negligent or fraudulent, if it be done in the course of his employment, the master is liable." *Steamboat Co.* v. *Brockett*, 121 U. S., 637.

The defendant relies on the case of *N. & W. R. R. Co.* v. *Wysor*, 82 Va., 250; but that case widely differs from the present. There the plaintiff, in wilful violation of the contract, tendered detached coupons for his passage, which the conductor refused to receive. The evidence, moreover, showed that he got on the train with the expectation and intention of being ejected therefrom, with a view of making a case for damages, and this court justly held he was not entitled to recover.

But here no such circumstances exist, nor is there anything upon which to impute bad faith to the plaintiff. When his

offer to identify himself in the only mode specifically stipulated for was rejected, he was warranted in refusing to do more. Had he been permitted to sign his name, and had the conductor, upon examining the signature, been left in doubt as to the sufficiency of the evidence, he might then have required any additional evidence of identity that was reasonable. But when he arbitrarily refused to receive the evidence, which it was his primary duty to have accepted, accompanying his refusal, as he did, with gross insult to the plaintiff, which was afterwards repeated at Suffolk, he had no right to require the plaintiff to "otherwise identify" himself. He had no right, in other words, to repudiate a part of the contract, and to require the plaintiff to comply with the residue.

And it makes no difference that he declared himself " not a judge of handwriting." For the purposes of a case like this, at least, the company in effect contracted that he was. At all events, it cannot now escape liability on the ground that he was not, for the contract must be taken in all its parts, and effect given to the whole.

There was, moreover, a further violation of the contract in taking up the ticket, inasmuch as the only stipulated ground of forfeiture was the presentation of the ticket for passage by a person other than the original purchaser thereof. And not only this, but after the circumstances of the case had been reported to the general passenger agent, the *alter ego*, of the company, he refused to return the ticket, thus ratifying what had been done.

We concur, therefore, in the view that the jury were not only warranted in finding for the plaintiff, but that the case is a proper one for exemplary damages. The conduct of the conductor was not only illegal, but may be justly termed wanton and malicious. "Every unlawful act," said the court, speaking by Judge Staples, in *Borland* v. *Barrett*, 76 Va., 128, "done wilfully or purposely, to the injury of another, upon slight provocation, is as against such person malicious, and the law

so presumes." And the subsequent *ratification* by the company of the acts complained of brings the case within the principle holding a corporation liable in exemplary damages for the misconduct of its agents. *Lake Shore, &c., Railway Co.* v. *Prentice*, 147, U. S., 101.

It is true the plaintiff was not forcibly ejected, but he was told by the conductor, after his ticket had been taken up, that he must get off the train, and what was done amounted, in contemplation of law, to an expulsion, though no force to remove him was exerted. His leaving the train as he did was induced by the deceptive promise of the conductor to give him the receipt he demanded, and it does not, therefore, lie in the company's mouth to say he was not expelled from, but voluntarily left, the train. It cannot, in other words, take advantage of the fraud of its own agent.

The next question, then, is whether the damages given by the jury are excessive. That the sum awarded is greater than the actual damage suffered by the plaintiff is not disputed. But it is to be considered that when exemplary damages are allowed, the object of the law is not only to recompense the sufferer, but to punish the offender, and thereby to deter others from like offending. In *Day* v. *Woodworth*, 13 How., 363, the the court said: "It is a well-established principle of the common law that in actions of trespass and in all actions on the case for torts, a jury may inflict what are called exemplary, punitive, or vindictive damages upon a defendant, having in view the enormity of his offence, rather than the measure of compensation to the plaintiff. We are aware that the propriety of this doctrine has been questioned by some writers, but if repeated judicial decisions for more than a century are to be received as the best exposition of what the law is, the question will not admit of argument." And in numerous subsequent decisions of the same court the rule has been declared that whenever the injury complained of has been inflicted maliciously or wantonly, and with circumstances of contumely or

indignity, the jury are not limited to compensatory damages, but may give such exemplary damages as, in their opinion, are called for by the circumstances of the case.   *Philadelphia, &c., Railroad Co.* v. *Quigley*, 21 How., 202; *Barry* v. *Edmunds*, 116 U. S., 550; *Denver, &c., Railway* v. *Harris*, 122 *Id.*, 597; *Lake Shore, &c., Railway Co.* v. *Prentice*, 147 *Id.*, 101.

The same doctrine was enforced by this court in *Borland* v. *Barrett*, 76 Va., 128.

A corporation, like a natural person, may be held liable in exemplarary damages for the act of an agent, where the act is participated in, or authorized, or, as in the present case, ratified by the principal.   *Lake Shore, &c., Railway Co.* v. *Prentice*, 147 U. S., 101.   And as the measure of the defendant's liability must depend upon the particular circumstances of each case, it is a matter left to the discretion of the jury, whose finding will not be disturbed, unless so out of the way as to evince passion, prejudice, partiality, or corruption in the jury. *Borland* v. *Barrett*, 76 Va., 128; *Peshine* v. *Shepperson*, 17 Gratt., 472, 488; *Farish* v. *Reigle*, 11 *Id.*, 697; *Va. Mid. R. R. Co.* v. *White*, 84 Va., 498; *Bertha Zinc Co.* v. *Beach*, 88 *Id.*, 303.

Referring to this rule in the recent case of *Ward* v. *White*, 86 Va., 212, which was an action for assault and battery, it was said:

"The reason for holding parties so tenaciously to the damages found by the jury in personal torts is, that in cases of this class there is no scale by which the damages are to be graduated with certainty.   They admit of no other test than the intelligence of the jury, governed by a sense of justice.   It is indeed one of the principal causes in which the trial by jury has originated."

Applying this rule to the circumstances of the present case, the verdict must stand.   It is true the recovery is a large one; but it is not so disproportioned to the injury inflicted and the character of the offence as to "shock the understanding," or to induce the belief that the jury were influenced by improper

motives; and when this can be affirmed of a verdict in a case of this sort, it would be an invasion of the province of the jury, and, therefore, an abuse of power on the part of the court, especially an appellate court, to set it aside.

It is contended, however, that the circuit court erred at the trial in failing to exclude certain illegal evidence, and that for this error the judgment should be reversed.    But there is nothing in this objection.

It appears that soon after the occurrences mentioned in the declaration, the plaintiff unsuccessfully attempted to travel on the defendant's road on the conductor's receipt for his ticket. After this had been narrated to the jury, the defendant's counsel objected to the evidence, on the ground that it was not relevant to the case stated in the declaration, and moved to exclude it.    The judge ruled that the evidence was illegal, and said he would hear a motion to exclude it at a later state of the proceedings.    To this there was no exception, nor was the court's attention again called to the matter, before the verdict was rendered, and that was a waiver of the objection.    *Wash. Tel. Co.* v. *Hobson*, 15 Gratt., 122, 138; *Page* v. *Clopton*, 30 *Id.*, 415, 429; *Danville Bank* v. *Waddill*, 31 *Id.*, 469, 477.

This sufficiently disposes of the case, and renders it unnecessary to consider the assignment of error in regard to the instruction.    It is enough to say that the case was submitted to the jury in substantial conformity with the views expressed in this opinion, and that the judgment must be affirmed.