## Richmond.

### In Re Joel H. Cutchin, Mayor, Etc.

March 28, 1912.

1. PLEADING—*Amendments—Officers—Misfeasances.*—On the hearing of a rule against the mayor of the city to show cause why he shall not be removed from office on account of several offenses designated in the rule, he cannot, after all the evidence on both sides has been introduced, complain of an amendment of the rule, which operates no surprise, diminishes no means of defense, and abridges no right which he would have otherwise enjoyed, and, in fact, limits the range of inquiry and reduces the charges against him to one class of the offenses charged in the rule, omitting all reference to other offenses alleged against him.

2. EVIDENCE—*Knowledge—Newspaper Publications.*—Where it is important to bring home to the mayor of a city, on trial for certain malfeasances and misfeasances in office, knowledge of the existence of certain bad conditions in the city, a newspaper report of a public address made by him, disclosing such knowledge, may, when sufficiently identified, be read in evidence to the jury.

3. WITNESSES—*Discrediting—Bias—Prior Consistent Statements.*—Where it is sought to discredit a witness by proof of bias, prejudice, or corruption, the party calling him may show, in reply, the consistent statements of the witness made at a time prior to the existence of the fact said to indicate such bias, prejudice, or corruption.

4. EVIDENCE—*Relevancy—Time of Showing—Failure to Show Connection—Objections.*—When evidence is objected to as irrelevant, but is admitted upon assurance of the counsel offering it that he will connect it later on and show its relevancy, and he fails to do so, it is the duty of the objecting counsel to renew his objection and move to strike such evidence out, and, if he fails to do so, he cannot, after verdict, rely upon his objection. It is not the duty of the court to bear in mind such objection, and exclude the evidence. Counsel may have waived it, or deemed it immaterial.

5. EVIDENCE—*Relevancy.*—On a charge against the mayor of a city of malfeasance in office, in not enforcing ordinances against houses of ill fame, it is relevant to show that the keeper of such house threatened to have certain police officers removed from their beats; that the mayor gave the chief of police orders to remove them by reason of "com-

plaints from the women up there"; that, in obedience to the mayor's direction, orders were given for their removal, and they were in fact removed.

6. Witnesses—*Impeachment—Lack of Chastity—General Character.*—The veracity of a female witness may not be impeached by testimony of her bad reputation for chastity. A party seeking to impeach a witness will not be allowed to ask what the general character of the witness is in relation to other matters, as well as to his veracity.

7. Evidence—*Misfeasance in Office—Improved Conditions.*—On a charge against a mayor of a city that he has unlawfully, wilfully, and corruptly neglected and refused to enforce the laws of the State and the ordinances of the city against houses of ill fame, it is not permissible for him to show that, during his administration, the number of such houses has diminished, the moral condition of the city improved, and that there is less disorder in such houses than formerly. Such evidence is wholly irrelevant, and does not tend either to prove or disprove the charge made.

8. Appeal and Error—*Excluding Testimony—Bills of Exception—Failure to State Anticipated Answer.*—The ruling of the trial court refusing to permit a witness to answer a question will not be reviewed on a writ of error, where the bill of exception fails to state what was sought to be proved by the witness.

9. Evidence—*Explanation of Writing—Mistake—Ambiguity.*—A witness may not be asked to explain the meaning of the language used in a letter when there is no mistake with respect to the letter, and no ambiguity in it appears.

10. Appeal and Error—*Verdicts—Admissibility of Evidence—Objections.*—Where, on the trial of the mayor of a city for malfeasance in office, the instructions of the court to the jury were such that the jury could not possibly have been misled into the belief that he could be found guilty, except for some act of commission or omission during his present term of office, their verdict will not be set aside because evidence was received of an occurrence which took place before his present term began, when no objection was made to the admissibility of the evidence on that ground, but exception was based solely upon the ground that the evidence was immaterial, irrelevant, impertinent, collateral, and too remote.

11. Views—*When to be Granted.*—The right to view premises by a jury is not an absolute right of a litigant, but rests in the sound discretion of the trial court, subject to review under proper circumstances. The view of a jury, in any case, is of indeterminate probative value, and should be resorted to only where there is a reasonable certainty that it will give the jury substantial aid in reaching a right verdict.

12. Appeal and Error—*Instructions—Jury Fully Instructed—Rejection of Other Instructions.*—Where the instructions given in a case correctly propound the law, and are amply sufficient to guide the jury in their

deliberations, the case will not be reversed because some of the instructions tendered and refused correctly stated the law, and might, with propriety, have been given.

13. GRAND JURIES—*Duties*—*Misfeasances of Officers.*—It is the duty of the grand jury, among other things, to examine into accusations against persons charged with crime, and, if they see just cause, to find bills of indictment against them, and to act in such public matters as may be brought before them, such as inquiries into misfeasances in office, prevalence of crime, and public nuisances.

Error to a judgment of the Corporation Court of the city of Roanoke, on a rule against the mayor to show cause why he should not be removed from office for misfeasance therein.

*Affirmed.*

The following instructions propounded by the defendant were *refused.*

DEFENDANT'S INSTRUCTION NO. 1—REFUSED.

"The court instructs the jury that the defendant, Joel H. Cutchin, mayor of Roanoke, is presumed, as a matter of law, to be innocent of the charges contained in the specifications, and this presumption of innocence must be overcome by a preponderance of affirmative evidence, and must be such as to satisfy the minds of the jury that he is guilty of one or more of the charges mentioned in the specifications. If the jury should find him guilty of one or more, they should say which one, and if they should find him not guilty of the others, then they should say so in their verdict.

"If, on the whole evidence, the jury should find it insufficient to sustain any of the charges in the specifications, it should render a verdict of not guilty."

DEFENDANT'S INSTRUCTION NO. 2—REFUSED.

"The court instructs the jury that, before any verdict can be found in this case against the defendant, it must believe from the evidence that during his present term of office, which the evidence shows began September 1, 1908, he either wilfully and

unlawfully, or wilfully, unlawfully, and corruptly, neglected and refused to enforce the laws of the State of Virginia and the ordinances of the city of Roanoke against houses of ill fame within said city, or they must believe that during his present term of office he unlawfully or wilfully and corruptly encouraged, connived at, and advised the keepers of such houses in said city in the keeping and maintenance of the same, against the laws of the State and the ordinances of the city; and the court tells the jury that even if it may believe from the evidence that the accused has omitted to enforce strictly and to the letter the ordinances of the city or the laws of the State, yet, if he was only guilty of a mistake in judgment, then there can be no verdict against him."

### DEFENDANT'S INSTRUCTION NO. 3—REFUSED.

"The court further instructs the jury that the mayor of the city of Roanoke, the defendant in this case, was under no duty or obligation to go around and discover or seek to discover the existence of houses of ill fame, and that this duty rested upon the police department, and there was no duty resting upon the mayor to enforce an ordinance or a law of the State until he was satisfactorily informed of the breach or violation of the law of the State or ordinance of the city, and, until so informed, there was no duty resting upon him to institute and prosecute proceedings against supposed or alleged offenders for violations of the law. The mayor of the city was charged with the duty of executing the laws when he was advised, or had reason to believe, of any violation of them, but no duty rested upon him to go out into the city and act either as a detective or a spy, so as to discover whether there were houses of ill fame or other violations of the law, but when his attention was drawn to a violation of any ordinance or statute law of the State, and he was satisfied that there had been a violation, or that the subject should be investigated, then it became his duty to have the matter investigated by the proper authority."

### DEFENDANT'S INSTRUCTION NO. 4—REFUSED.

"The court further instructs the jury that if it believes from

the evidence that the defendant, when he became mayor of the city of Roanoke, found that there existed in the city a number of houses of ill fame, scattered throughout the different parts of the city, and that, after inquiry and consideration, he honestly reached the conclusion that it was better to assemble said houses in one section of the city, or as nearly as possible in one section, where they would be the least offensive to the least number of people, and that, acting in good faith, he did have these houses assembled in such place or places; and if they further believe from the evidence that the defendant, in pursuing this course, acted in good faith and with an honest purpose and intention to enforce the ordinances of the city and the laws of the State against the keeping and maintenance of these houses, they should find a verdict for the defendant, even though they may believe that he had not followed out the strict letter of the ordinances of the city or the laws of the State; the court telling the jury that in such a case it would only be a mistake of judgment in any event, and it is for the jury to say whether or not it was even a mistake of judgment, and, in determining this question, the jury have a right to consider all of the evidence in the case."

DEFENDANT'S INSTRUCTION NO. 5—REFUSED.

"Even though the jury may believe from the evidence that the method adopted by the defendant of assembling these houses of ill fame on High street, or its vicinity, was not in strict conformity to the letter of the State and city laws, and even though they may believe from the evidence that it might have been better for him to have followed out strictly and literally the letter of the State and city laws, yet, if they believe that in the adoption and carrying out of this policy of assembling these houses in such place or places as shown by the evidence, he acted in good faith, believing that he was making an honest effort to enforce the laws of both the city and State, they should find the defendant not guilty; the court telling the jury that if he acted in good faith, honestly believing that the method adopted by him was the best and most effective way of enforcing the ordinances of the city and the laws of the State, he is guilty of no

offense and cannot be convicted, even though the jury may believe he made a mistake in judgment."

### DEFENDANT'S INSTRUCTION NO. 6—REFUSED.

"Before any verdict can be found against the defendant in this case, the jury must be satisfied, by a preponderance of affirmative evidence, that he acted in the matters mentioned in the specifications in bad faith or corruptly. It is not enough that he made a mistake of judgment in the enforcement of the State or city laws, but such a mistake must have been wilful or corrupt, and if neither, then he has been guilty of no offense. If, on the whole evidence, the jury believe that the defendant acted in good faith, honestly believing that he was enforcing the ordinances of the city and the laws of the State in the most effective way, then they should find a verdict of not guilty, even though he may have been mistaken about it."

### DEFENDANT'S INSTRUCTION NO. 7—REFUSED.

"The court instructs the jury that the law does not require of any man the performance of a physical impossibility, and if the jury believe from the evidence that it was a physical impossibility to enforce to the very letter of the law the city ordinance or the State statute with respect to houses of ill fame, and that the defendant, in this case, undertook in good faith to enforce the laws, they cannot find him guilty in this proceeding, even though he fell short of enforcing the said laws, or either of them, according to their very letter."

### DEFENDANT'S INSTRUCTION NO. 8—REFUSED.

"The court instructs the jury that if they believe from the evidence that it was impossible to entirely suppress houses of ill fame in the city of Roanoke, then it was only incumbent upon the defendant to so enforce the city ordinances in relation thereto as best he could, so as to reduce the number of said houses and to minimize the evil resulting therefrom as much as possible, and

therefore, if they believe from the evidence that the defendant, in good faith, adopted and pursued a policy in relation to such houses, which, in his judgment, was calculated to reduce the number of said houses to as small a number as was possible, and to reduce the evil arising therefrom to a minimum, then they shall find him not guilty as charged in specification No. 1, although they may believe that in pursuance of such policy he did not enforce the city ordinances in relation thereto to the letter, or that he failed to accomplish the contemplated result."

### DEFENDANT'S INSTRUCTION NO. 9—REFUSED.

"The court instructs the jury that the fact that houses of ill fame have existed in the city of Roanoke during the present term of office of the defendant is not even *prima facie* evidence against him of any of the charges set forth in the rule."

### DEFENDANT'S INSTRUCTION NO. 10—REFUSED.

"The court instructs the jury that it is no part of the duty of the mayor to see to the enforcement of the State statutes against houses of ill fame."

### DEFENDANT'S INSTRUCTION NO. 11—REFUSED.

"The court instructs the jury that the evidence of certain police officers that Maggie Ferguson told them that the mayor had given her permission to run a house of ill fame with white girls as inmates is no evidence against the defendant to prove that he had given her such permission."

### DEFENDANT'S INSTRUCTION NO. 12—REFUSED.

"The court instructs the jury that the fact that the witness, Ernest Baldwin, declined to answer the question as to whether or not he had ever seen the defendant in a house of ill fame is not the slightest evidence to prove such a fact, and the jury must entirely discard this incident on their consideration in arriving at a verdict."

### DEFENDANT'S INSTRUCTION NO. 13—REFUSED.

"The court instructs the jury that it is not the duty of the mayor to act as detective to discover who are and who are not keeping houses of ill fame, and to swear out warrants against the offenders, and to personally secure evidence in order to convict them. This is the duty of the police officers, and the mayor would not be guilty of any violation of his official duties in regard thereto unless he gave such officers instructions contrary to their said duty, or failed to discipline such officers for failure to perform any of their said duties after such failure came to his knowledge."

### DEFENDANT'S INSTRUCTION NO. 14—REFUSED.

"The court instructs the jury that any personal misconduct of the mayor attempted to be proven, which is not connected in any way with houses of ill fame, is not proper evidence to be considered by them in arriving at their verdict."

### DEFENDANT'S INSTRUCTION NO. 15—REFUSED.

"The court tells the jury that this inquiry is confined to the mayor's present term of office, and any evidence, if there be any, tending to show that he did not properly perform his official duties during some prior term of office, is not evidence of his failure to properly perform his duties in relation to houses of ill fame during his present term of office. Before such evidence can even be considered by them, they must first believe that the defendant has been guilty of violating his official duties in regard to such houses during his present term of office, and then evidence of violation of such duties, if any be shown, during prior terms, can only be considered in order to throw light on his alleged motive."

### DEFENDANT'S INSTRUCTION NO. 16—REFUSED.

"The court instructs the jury that the word 'wilful,' as used in the rule, not only means obedience to the will, but goes further,

and, as applied to the case at bar, means that the mayor, knowing or believing what his official duties were as to houses of ill fame, with such knowledge or belief, perversely acted or failed to act."

### DEFENDANT'S INSTRUCTION NO. 17—REFUSED.

"The court instructs the jury that although they may believe from the evidence that the mayor did not enforce the city ordinances in regard to houses of ill fame in the exact manner contemplated by said ordinances, yet, if they believe that he, in good faith, enforced said ordinances as he understood and interpreted them, he is not guilty of wilfully and unlawfully neglecting and refusing to enforce same, as charged in the rule."

### DEFENDANT'S INSTRUCTION NO. 18—REFUSED.

"The court instructs the jury that if they believe from the evidence that it was impossible to entirely suppress houses of ill fame in the city of Roanoke, then it was only incumbent upon the defendant to enforce the ordinances in relation thereto as best he could, so as to reduce the number of said houses in the city and to minimize the evil resulting therefrom as much as possible; and if they believe from the evidence that the defendant, in good faith, and in attempting to suppress said houses of ill fame, adopted and pursued a policy in relation to such houses which in his judgment was calculated to reduce the number of said houses as much as possible, and to reduce the evils arising therefrom to a minimum, they shall find him not guilty."

To the granting of which instructions, and each of them, the prosecution, by counsel, objected, and the court sustained said objections, and refused to grant any of said instructions asked for by the defendant, but, of its own motion, gave the following instructions to the jury:

### COURT'S INSTRUCTION NO. 1.

"The court instructs the jury that, before they can find a

verdict against the defendant, Joel H. Cutchin, mayor of the city of Roanoke, under the rule against him to show cause why he should not be removed from his said office for malfeasance, misfeasance, and gross neglect of official duty, they must believe from the evidence that, during his present term of office, which the evidence shows began September 1, 1908, he unlawfully and wilfully neglected or refused to enforce the ordinances of the city of Roanoke against houses of ill fame within said city; or they must believe that, during his present term of office, he unlawfully and wilfully permitted, encouraged, connived at, or advised the keeping of such houses within said city, against the city ordinances. These charges are set out under the first two specifications, numbered 1 and 2 of the rule to show cause.

"If the jury find the defendant guilty of these charges, or either of them, they will then proceed, but not otherwise, to determine from the evidence whether or not the defendant was, as charged in specifications 3 and 4 of the rule, actuated by corrupt motives.

"For an official to act corruptly, he must do or fail to do something inconsistent with his official duty for the purpose of securing some benefit, advantage, or favor to himself, or to some other person. Corruption is the unlawful and wrongful use of his station by an official, to procure some benefit or privilege for himself or for another person, contrary to the duty and the rights of others."

## COURT'S INSTRUCTION NO. 2.

"The inquiry as to the guilt or innocence of the defendant is confined to his present term of office. If there be any evidence tending to show he failed to perform or did not properly perform his official duties during some prior term of office, it is not evidence of his failure to properly perform his duties in relation to houses of ill fame during his present term of office. Before such evidence can be considered by the jury, they must first believe that the defendant has been guilty of violating his official duties in regard to such houses during his present term of office, and then evidence of violation of such duties, if any there be, during prior terms, can be considered only in order to throw light on his alleged motive."

### COURT'S INSTRUCTION NO. 3.

"The court instructs the jury that the defendant is presumed, as a matter of law, to be innocent of the charges contained in the specifications, and this presumption of innocence must be overcome by a preponderance of affirmative evidence, and must be such as to satisfy the minds of the jury, but not beyond a reasonable doubt, that he is guilty of one or more of the charges mentioned in the specifications.

"The fact that houses of ill fame have existed in the city of Roanoke during his present term of office is no evidence of the guilt of the defendant, unless the evidence further shows that he knew, or had good cause to believe, such houses did exist."

### COURT'S INSTRUCTION NO. 4.

"The court instructs the jury that they should not consider as evidence what the question or questions propounded indicated would or might have been the testimony of any witness who was introduced but declined to answer, or that of any witness whose testimony was ruled out by the court.

"Nor should the evidence of certain police officers that Maggie Ferguson told them the defendant had given her permission to run a house of ill fame with white girls as inmates be considered by the jury as evidence of that fact, but only as tending to show her credibility.

"Nor should any personal misconduct of the defendant, attempted to be proved, which is not connected in any way with houses of ill fame, or the keepers thereof, or inmates therein, be considered by the jury."

### COURT'S INSTRUCTION NO. 5.

"The court instructs the jury that malfeasance in office is the doing of an act for which there is no authority or warrant of law; while misfeasance is the wrongful and injurious exercise of lawful authority—that is, the doing of an act which might lawfully be done, but is done in an improper manner.

"Gross neglect of official duty is the wilful failure or refusal of the officer to perform the duties imposed upon him for the enforcement of the law and the preservation of good order and morals.

"The word 'wilful,' as used above, and in the rule to show cause, means an obedience to the will—that is, a purpose to do or leave undone some official duty imposed by law."

### COURT'S INSTRUCTION NO. 6.

"The court instructs the jury that the keeping of a house of ill fame, resorted to for the purpose of prostitution and lewdness, is made unlawful by the ordinances of the city of Roanoke.

"It is also made unlawful by said ordinances for any person to rent or lease to another property within the city knowing that the same is to be used as a house of ill fame or is to be resorted to for the purpose of prostitution; or who permits such use of his property, after he has been notified of the purposes for which it is used."

### COURT'S INSTRUCTION NO. 7.

"It is made the duty of the mayor of the city of Roanoke to enforce the ordinances of the city, and to see that the various city officers, and especially the police force, faithfully perform their duties.

"While the chief of police is the chief executive officer of the police department, he is under the control of the mayor for the purpose of enforcing peace and order and carrying into effect the ordinances of the city."

### COURT'S INSTRUCTION NO. 8.

"But it is not the duty of the mayor of the city of Roanoke, and he is under no obligation to actively seek to discover the existence of houses of ill fame, nor is he called upon to enforce or have enforced the ordinances of the city for their suppression until he is satisfactorily informed, or by the exercise of reasonable

diligence could have been so informed, of violations of such ordinances. This duty of discovery and running down such offenders by detective work rests upon the chief of police and the force under him. If, however, the mayor is advised of such violations, or has good reason to believe houses of ill fame to exist, or complaint is made to him of their existence, or has actively assumed the control and direction of such matters, and if he knew or believed the police force was not enforcing the law for their suppression, it then became his duty to direct the chief of police to have the suspected violations looked after, to the end that the offenders, if such there be, might be brought before the proper authorities for investigation and to be dealt with according to law. It is the duty of the mayor to see that the various city officers faithfully perform their duties."

### COURT'S INSTRUCTION NO. 9.

"The court instructs the jury that if they believe from the evidence the defendant, during his present term of office as mayor of the city of Roanoke, knew, or had good reason to believe, or complaint had been made to him, that there were houses of ill fame in certain sections of said city, and gave either his express or tacit consent to their existence and operation, or to the existence and operation of any one of them; or if, after satisfactory information of their existence and operation, or of the existence and operation of any one of them, expressed to the chief of police, either verbally or in writing, a desire or wish that houses of ill fame in certain sections of the city should not be molested or interfered with, or neglected or refused to direct the chief of police to have such houses suppressed, by causing the arrest of the offenders, if in the opinion of the police department there was sufficient evidence to justify such arrest, and bring them before the proper authorities for investigation; or if he knew, or, by the exercise of reasonable diligence, after complaint made to or information received by him, could have known, the owners of the houses used for such purposes, and failed to notify such owners, or have them notified, that their property was being used for purposes of prostitution and lewdness, then the defendant was guilty of gross neglect of

official duty, and the jury should by their verdict find him guilty of the charges set out in specification 1 of the rule.

"If the jury believe from the evidence that the defendant is guilty of unlawfully and wilfully doing or failing to do what is charged in specification 1 of the rule, and if they further believe from the evidence that he acted corruptly, within the meaning of these instructions, they should find him guilty of the charges set out in specification 3 of the rule."

### COURT'S INSTRUCTION NO. 10.

"If the jury further believe from the evidence that, during his present term of office as mayor of the city of Roanoke, any house or houses of ill fame were opened and operated within the said city by his express permission, or that said defendant promised the protection of the law and immunity from arrest to any keeper of such houses, then such permission or promise of protection was the doing of an act which was without authority or warrant of law, and was malfeasance in office, and the jury should, by their verdict, find the defendant guilty of the charges set out in specification 2 of the rule.

"If the jury believe from the evidence that the defendant is guilty of the charges set out in specification 2 of the rule, and if they further believe from the evidence that he acted corruptly, within the meaning of these instructions, they should find him guilty of the charges set out in specification 4 of the rule."

### COURT'S INSTRUCTION NO. 11.

"The court further instructs the jury that if they believe from the evidence that the defendant has done or omitted to do what is charged in specifications 1 and 2 of the rule, he cannot excuse or justify himself for his conduct, even though he might have acted from honest convictions that he was doing what was best to minimize the evil. It was the duty of the defendant to have the ordinances of the city enforced, and not to make terms with offenders, whereby they were permitted to continue as violators of the law. He has no right, power, or

59

authority to annul any ordinance of the city, or suspend its opera-
tion as to any person or locality.   He had no authority to inaugu-
rate or put in operation any policy or system whereby the same
conditions, the maintenance of houses of ill fame, would be
permitted to continue, and the keepers and inmates thereof given
protection.

"But if the jury believe from the evidence that the defendant
adopted a certain policy in dealing with houses of ill fame, and
honestly believed the policy adopted by him was for the best
interest of the city, and that such houses would there be the least
offensive to the least number of people, then, in the adoption
of such a policy, he would not be guilty of the charges contained
in specification 3 of the rule."

COURT'S INSTRUCTION NO. 12.

"The court further instructs the jury that if they should find
the defendant guilty of one or more of the charges contained in
the specifications, they should say which one, and if they should
find him not guilty of the others, then they should say so in their
verdict.

"If, on the whole evidence, the jury should find it insufficient
to sustain any of the charges in the specifications, they should
render a verdict of not guilty.

"Which said instructions the court certifies as all the instructions
given in the case."

*Marshall McCormick, John L. Lee,* and *J. W. Henson,* for the
plaintiff in error.

*H. M. Smith, Jr.,* and *Hairston, Hairston & Willis,* for the
defendant in error.

BY THE COURT:

A special grand jury of the Corporation Court of the city of
Roanoke made a report on the 29th of March, 1911, tending to
show misfeasance, malfeasance, and gross neglect of official duty

on the part of Joel H. Cutchin, as mayor of the city of Roanoke, and recommending to the court that such proceedings be had as are provided by law for his removal from said office; and thereupon the court summoned Joel H. Cutchin, mayor as aforesaid, to appear before the corporation court on Monday, the 24th day of April, 1911, to show cause why he should not be removed from the said office of mayor of the city of Roanoke.

This proceeding was had under section 1033 of the Code, which, so far as applicable to this case, is as follows: "The corporation court of a city may remove the mayor of said city from office for malfeasance, misfeasance, or gross neglect of official duty, and such removal shall be deemed a vacation of the office. All proceedings against a mayor for the purpose of removing him from office shall be by order of or motion before said court, upon reasonable notice to the party affected thereby, and with the right to said party of an appeal to the supreme court of appeals."

The charges which the mayor was called upon to answer were numerous, embracing his conduct with reference to houses of ill fame, gambling houses, his refusal to investigate the conduct of police officers, and various specifications of those charges. The mayor appeared, and, at the conclusion of the evidence in chief in support of the rule against him, the court (Judge J. M. Mullen, of Petersburg, presiding) being of opinion that the interests of justice would be subserved thereby, amended the rule, and substituted in lieu thereof four charges, which are as follows:

"1st. That the said Joel H. Cutchin, mayor of the city of Roanoke, aforesaid, did, at divers times during his present term of office, unlawfully and wilfully neglect and refuse to enforce the laws of the State of Virginia and the ordinances of the city of Roanoke against certain houses of ill fame within said city.

"2d. That the said Joel H. Cutchin, mayor of the city of Roanoke, did, at divers times during his present term of office, unlawfully and wilfully permit, encourage, connive at, and advise the keeping of certain houses of ill fame in said city of Roanoke, and the maintenance of the same.

"3d. That the said Joel H. Cutchin, mayor of the city of Roanoke, aforesaid, did, at divers times during his present term of office, unlawfully, wilfully, and corruptly neglect and refuse

to enforce the laws of the State of Virginia and the ordinances of the city of Roanoke against certain houses of ill fame within said city.

"4th. That the said Joel H. Cutchin, mayor of the city of Roanoke, aforesaid, did, at divers times during his present term of office, unlawfully, wilfully, and corruptly permit and encourage and connive at and advise the keeping of certain houses of ill fame in the city of Roanoke, and the maintenance of the same."

After all the evidence in support of and in answer to the rule had been introduced, and the jury had been fully instructed, a verdict was returned, finding the mayor guilty upon all four of the charges; and thereupon the court entered judgment vacating the office of mayor of the city of Roanoke. To this order a writ of error was awarded, which brings in review certain rulings of the court made during the trial, in the admission and rejection of evidence, in instructions given and refused, and on the motion to set aside the verdict as contrary to the law and the evidence.

Plaintiff in error complains that the court directed an amendment of the rule after the testimony in support of the rule, as originally framed, had been introduced; but it is certain that this action of the court was not prejudicial to the plaintiff in error, but was to his benefit rather than otherwise, as it limited the range of inquiry and reduced the charges to the conduct of the mayor with reference to houses of ill fame, omitting all reference to other offenses originally alleged against him. It operated no surprise, diminished no means of defense, and abridged no right which he would otherwise have enjoyed.

The first assignment of error in the petition relates to the instructions given and refused by the court; but we deem it expedient to deal first with those with respect to the admission of testimony.

Assignment of error No. 3 is founded upon bill of exceptions No. 4, taken during the progress of the trial, because A. H. Griffin was permitted to read a newspaper publication to the jury, purporting to be a speech made by the mayor some time in the year 1909, which was objected to because it was not sufficiently shown that the publication contained the exact language of the mayor, and because there was nothing in the speech that was relevant to any issue in the cause.

We think it was sufficiently identified by the evidence of Griffin and by the testimony of the mayor. In answer to a question from the court, counsel for the defense said: "We admit that the mayor made that address, and we admit that it was published in the newspapers the next morning; but we do not admit the relevancy of it." But this objection is, we think, without force. One of the necessary elements of the inquiry under consideration was to bring home knowledge of existing conditions to the mayor, and that address seems to bear forcibly upon that point. At one period during his administration the situation with respect to houses of ill fame seems to have been turned over by the mayor to the control of the chief of police. That control lasted for about four months; and in the address he uses the following language: "I have decided to assume the position occupied by me ever since I have been mayor, except the past four months. * * * Bad results have followed the attempt to break up houses of ill fame. The police have been unable to change the heart and inclination of such people, and have simply scattered them about the city, to the disgust, danger, and annoyance of respectable people." This assignment of error is overruled.

Assignment of error No. 4 is based upon bills of exceptions 5, 10, 11, 12, and 13, all of which deal with the evidence of one Maggie Ferguson.

The record shows that Maggie Ferguson, a negress, had been conducting a house of ill fame in the city of Roanoke; that at the time she testified she had been convicted of a felony, and that the verdict of the jury fixed her punishment at eight years in the State penitentiary. She testified that the mayor had given her permission to conduct a house of ill fame in the city of Roanoke and to keep white girls as inmates. She also testified as to having had intimate personal relations with the mayor, and the prosecution sought to support her statements by proving that, prior to the mayor's giving her this alleged permission, she asked other officers for such permission, and was referred to the mayor, and by proving by a number of police officers that prior to this prosecution she had told them that the mayor had given her such permission, thus attempting to support her statements made in court by proof of the fact that similar statements had been made by her out of court.

The rule, without doubt, is that self-serving statements made out of court cannot be shown in order to corroborate the testimony of a witness. But there are well-established exceptions.

It appears that counsel for the defense examined this witness as to why she had not been sentenced after conviction by the jury, and brought out the fact that she had been convicted at a prior term, but that sentence had not been pronounced upon her. It appears further that counsel for the defense brought out the fact that Mayor Cutchin was not put on the stand at the trial of this woman to prove that she had been given permission to commit the crime for which she had been sentenced to the pentitentiary, and it was further shown that Mayor Cutchin had refused to come and testify for her at the time of her trial. The inference which was sought to be deduced from these facts was a bias or spite against the mayor by reason of his refusal to testify in her behalf. The witness was subjected to a severe cross-examination by counsel for the defense as to previous statements made by her, and we are of opinion that the ruling of the court comes within the exception to the rule.

In *Howard* v. *Commonwealth*, 81 Va. 490, an attempt was made to discredit a witness by showing malice growing out of an arrest for larceny, and the court said: "To repel the attack thus made, it was competent for the prosecution to prove that prior to his arrest the witness gave the same account of the matter that he gave on the trial." The opinion cites *Robb* v. *Hackley*, 23 Wend., (N. Y.) 50, where it is said: "If an attempt is made to discredit the witness, on the ground that his testimony is given under the influence of some motive prompting him to make a false or colored statement, the party calling him has been allowed to show, in reply, that the witness made similar declarations at a time when the imputed motive did not exist."

In Rice's Criminal Evidence, sec. 241, the law is thus stated: "Where the witness is charged with giving his testimony under the influence of some motive prompting him to make a false or colored statement, it may be shown that he made similar declarations at a time when the imputed motive did not exist. So, in contradiction of evidence tending to show that the account of the transaction given by the witness is a fabrication of late date,

it may be shown that the same account was given by him before its ultimate effect and operation, arising from a change of circumstances, could have been foreseen."

And in Wigmore on Evidence, section 1128, the law is very clearly and specifically stated, as follows: "A consistent statement, at a time prior to the existence of a fact said to indicate bias, interest, or corruption, will effectively explain away the force of the impeaching evidence; because it is thus made to appear that the statement, in the form now uttered, was independent of the discrediting influence."

In *Jessie* v. *Commonwealth*, 112 Va. 887, 71 S. E. 612, this court held, after reviewing a number of authorities, that it was competent for the prosecution to meet an attempt to discredit the witness, by showing that he himself had been charged with murder, by proving that before the assertion of that charge the witness had made the same declaration as to the guilty agent out of court that he afterwards testified to in court.

To the suggestion of counsel for the defense that the statement to the officers was fabricated for the purpose of throwing them off their guard and preventing arrest, the answer by counsel for the prosecution is ample, that the witness could not have known but that the police officers would report her statement to the mayor for confirmation, in which most probable event she would have been caught in her own snare.

Assignment of error No. 5 rests upon bills of exceptions 6 and 7, and deals with the evidence of Rose Turner. This woman had kept a house of ill fame in Roanoke, which had been broken up by the authorities. She left the city for a time, and, wishing to return, opened negotiations with Mr. Penn, to see if she could not be permitted to come back; and she came back and opened a house on High street. This evidence was objected to by counsel for the defendant on the ground that he was not shown to be in any way connected with Mr. Penn; " *   *   *   but the court, being assured by counsel for prosecution that they would connect it, permitted said questions to be asked and said answers to be given; but the same were not connected, as the record will show, and the court's attention not being called to this failure, it did not rule further on the motion to exclude, and said evidence went to the jury," and to this action of the court the defendant excepted.

What the court did was but the equivalent of saying to counsel, "I will not rule upon this question for the present, the Commonwealth having undertaken to connect the mayor with this evidence; but if that is not done, and this objection shall be renewed, the evidence will be excluded"; and the sole question is, upon whom lay the burden to make the subsequent objection to its introduction, and to ask for its exclusion? To require the court to bear all these matters in mind during a protracted trial would be to impose upon it a burden not conducive to the proper administration of justice. It is the business of counsel to bring such matters to the attention of the court. Counsel may have waived the objection. They may have regarded it as immaterial. But, however that may be, it was the duty of counsel, and not that of the court, to renew the objection to the admission of testimony.

In *Lundvick* v. *National Union Fire Ins. Co.*, 128 Iowa 347, 103 N. W. 970, it is said that "though, on the statement of counsel that he will 'connect this further on,' testimony incompetent, so far as the record discloses, is admitted over objection, and it is not made competent by further testimony, error is waived by failure to move to strike."

In *Brady* v. *Finn*, 162 Mass. 260, 38 N. E. 506, it is said: "An exception to the admission of evidence which it was within the discretion of the judge to admit when offered, although it might have been excluded until further testimony had been put in, can not be sustained if, no such testimony having been introduced, the excepting party, at the close of the evidence, did not request that the evidence objected to be stricken out, and that the jury be instructed to disregard."

In *Doon* v. *Felton*, 203 Mass. 267, 89 N. E., 539, it was held that "where evidence was admitted on statement of plaintiff's counsel that he would offer evidence to connect the subject of the evidence with the defendant, upon plaintiff's failure to offer that evidence, defendant should have moved to strike out the evidence, and, not having done so, he has no ground of exception."

To the same effect is *Ducharme* v. *Holyoke St. Ry. Co.*, 203 Mass. 384, 89 N. E. 561. See also *N. & W. Ry. Co.* v. *Anderson*, 90 Va. 1, 17 S. E. 757, 44 Am. St. Rep. 884; *Moore Lumber Corporation* v. *Walker*, 110 Va. 775, 67 S. E. 757.

Assignment of error No. 6 rests upon bills of exceptions 8 and 9.   J. L. Manning and J. T. Reynolds, police officers of the city of Roanoke, testified that one Vici Isom, a keeper of a house of ill fame, had caused them to be removed from their beats because they interfered with her in her violation of the law.   H. N. Dyer, chief of police, testified that the mayor gave him orders to remove these officers from this beat by reason of complaint from women up there, and that he gave the orders to the sergeant in charge (Sergeant Overstreet), and the officers testified that this sergeant changed their beats.   We have, then, this sequence of events: Vici Isom threatened that she would have Manning and Reynolds removed from their beats; the chief of police testified that the mayor gave him orders to remove these officers by reason of complaints from the women up there, and that, in obedience to the mayor's direction, he gave orders to Sergeant Overstreet for their removal, and they were, in point of fact, removed.   These events seem to be so reasonably connected and dependent the one upon the other in the chain of causation as to render them admissible in evidence upon the charge of malfeasance in office.

Assignment of error No. 7 calls in question the rulings shown in bills of exceptions 14 and 15.   They deal with the witness, Bertie A. Martin, who testified that she was in the defendant's office two years ago; that he locked the door, put the key in his pocket, pulled down the blinds, and commenced to take liberties with her; that she commenced to cry, and finally he let her go.

In order to impeach this testimony, witnesses were offered to prove her reputation for chastity, but the court declined to allow the defendant to introduce proof along that line.

In *Langhorne's case*, 76 Va. 1012, it was held that it was not permissible to ask a witness if he had not been convicted of an offense which did not involve his character for truth on oath.

And in *Uhl's case*, 6 Gratt. (47 Va.) 706, it was held that the record of the conviction of a witness for petty larceny in another State is not admissible evidence to impeach the veracity of the witness.   And it was further held that a party seeking to impeach a witness will not be allowed to ask what the general character

of the witness is in relation to other matters, as well as to his veracity.

Any other rule would involve the court in an endless investigation of matters wholly collateral to the issue under trial.

Assignment of error No. 8 presents this question: The defendant offered to prove by a number of witnesses, leading citizens of Roanoke, that during defendant's incumbency of the office of mayor, from 1902 down to the present time, notwithstanding the large increase in population, the number of houses of ill fame in the city of Roanoke had been largely decreased, and that the moral conditions of the city had been greatly improved, and that there was very much less disorder in any of said houses; but the court refused to allow the evidence to go to the jury.

The evidence offered was wholly irrelevant. It tended neither to prove nor to disprove the charges under consideration. Grant that the number of houses had diminished, that the moral conditions of the city had improved, and that there was less disorder in those houses than formerly, yet if the mayor had unlawfully, wilfully, and corruptly neglected and refused to enforce the laws of the State of Virginia and the ordinances of the city of Roanoke against houses of ill fame, he would have been guilty as charged, although, during the course of his administration, all the things sought to be proved in his favor had been conclusively shown to the jury. It is our boast that ours is a government of law and not of men. No officer may substitute his discretion in the place of the law, which alone expresses the will and policy of the State.

Assignment of error No. 9 rests upon bill of exceptions No. 17. The defendant, to maintain the issue on his part, introduced as a witness Joel H. Cutchin, in his own behalf, and the following extract from a letter from him to the chief of police was read: "I also desire you to have before the court any persons keeping a house of ill fame on Earnest avenue west of the alley from Salem avenue to Earnest avenue, alongside the office and wareroom of the Central Manufacturing Company, leaving that portion of Earnest avenue east of the said alley undisturbed for the present, but have such regulation as you see proper." And the witness was asked: "What did you mean by 'but have such regulation as you see proper'?" A. "For him to use his discretion in handling

that matter." Counsel for the prosecution objected to said question and the answer thereto, and the court sustained the objection, to which action of the court the defendant excepted.

With respect to this question and answer, it seems to us wholly immaterial. It throws no light upon the letter, but merely re-states the phrase which he was asked to explain by the use of substantially identical terms.

Counsel for the defendant then stated: "I observe this passage in this letter: 'It is not my intention to interfere with High street, or with those at present located on the property of R. H. Angell; but of course this does not mean to say that you are not to run every one out of the city if you think proper.' I want to know what you mean by saying, 'It is not my intention to interfere with High street, or with those at present located on the property of R. H. Angell.' What did you mean by interference for the present with High street?" At this point counsel for the prosecution interposed an objection to the question and any answer that might be given thereto, and the objection was sustained. Counsel for the defendant thereupon asked: "Then you state in this letter, 'It is not my intention to interfere with High street.' Was it your intention to interfere everywhere else than High street?" The prosecution again objected, and the court sustained the objection; to all of which rulings of the court the defendant excepted.

With reference to the second and third questions propounded, it is sufficient to say that the exceptor does not vouch the answer which he expected to elicit. See *Stoneman* v. *Commonwealth,* 25 Gratt. (66 Va.) 887, the syllabus of which states: "An objection to a question asked and to the witness answering it is overruled, and an exception taken which does not state the answer. The appellate court cannot consider it." The same proposition has been frequently decided by this court, and is, indeed, so well established as not to require authority in support of it.

The evidence was in any event inadmissible. No mistake with respect to the letter was claimed and no ambiguity in it appears, and there was, therefore, nothing to explain.

Assignment of error No. 10 is sufficiently disposed of by what has been said with reference to assignment of error No. 8.

Assignment of error No. 11 calls in question the ruling of the court as set forth in bills of exceptions 19 and 20, which deal with an occurrence that took place in 1903, when a warrant was brought against Vici Isom to recover money which was alleged she owed. Mayor Cutchin was her counsel, and, under his direction, she pleaded that the debt was paid, and, upon further examination, it appeared that payment was made by illicit intercourse between herself and the agent of the plaintiff.

The exceptions in each of the bills relating to this matter are based, not upon the fact that the occurrences took place in 1903, before the beginning of the mayor's present term of office, but that the evidence was immaterial, irrelevant, impertinent, collateral, and too remote. The court was not called upon by bills of exceptions 19 and 20 to rule upon the admissibility of evidence relating to what occurred prior to the beginning of the present term of the mayor. We feel confident in stating that no objection upon that ground was taken to the admission of evidence during the entire trial—certainly it has been so asserted by counsel for the defendants in error, no instance of it has been pointed out to us by counsel for plaintiff in error, and our researches into this very voluminous record have not disclosed to us any such ruling upon the part of the court. When the court came to give instructions to the jury it told them that "they must believe from the evidence that, during his present term of office, which the evidence shows began September 1, 1908, he unlawfully and wilfully neglected or refused to enforce the ordinances of the city of Roanoke against houses of ill fame within said city; or they must believe that during his present term of office he unlawfully and wilfully permitted, encouraged, connived at, or advised the keeping of such houses within said city"; and the same proposition was presented in another instruction. So that the jury could not possibly have been misled into the belief that the mayor could be found guilty, except for some act of omission or commission during his present term of office.

We are of opinion that there was no error committed by the court in the admission or exclusion of testimony.

From bill of exceptions No. 21 it appears that the plaintiff in error moved the court to allow the jury to view the room which

the mayor used as his office at the time of the alleged incident related by the witness Bertie Martin, who had testified that when she visited the mayor's office he had first locked the door and then taken liberties with her person; the object of the view being to show that the door could not be locked from the inside. The motion of the plaintiff in error, being objected to, was refused by the court.

It not infrequently happens that in cases of homicide, in actions for damages for negligence, in suits to establish boundary lines, and in other instances, the jury are taken to the scene of the subject of investigation, in order that by a personal inspection of the locality they may be enabled intelligently to apply the evidence; but this is not one of the absolute rights of the litigant. It rests in the sound discretion of the court—a judicial discretion, it may be, which this court will, under proper circumstances, review; but there is nothing in the record in this case to show that such a view would have been helpful. The testimony of the witnesses was all sufficient to explain the situation. The view of a jury, in any case, is of indeterminate probative value, and should be resorted to only where there is a reasonable certainty that it will give the jury substantial aid in reaching a right verdict.

The condition of the lock—whether it would lock upon one side or the other—offered no difficulty which the jury could not as readily solve by the testimony of others as by a personal inspection.

Counsel for plaintiff in error asked for eighteen instructions, all of which the court refused, but in lieu thereof gave to the jury twelve, as sufficiently presenting the law of the case. We have considered these instructions, and, while we do not mean to say that none of those offered by the defendant correctly propounded the law, or that some of them might not have been given with propriety, we are of opinion that those which the court gave of its own motion correctly propounded the law, and were amply sufficient to guide the jury in their deliberations.

Viewed as upon a demurrer to the evidence, there can be no doubt that the evidence was sufficient to maintain the verdict. We are, indeed, of opinion that the verdict of the jury was in strict accordance with the preponderance of the evidence.

Counsel for plaintiff in error animadvert somewhat upon the conduct of the grand jury in this case, and seem to be of the opinion that, in making the report upon the conduct of the mayor, the grand jury had transcended its duty. In this view we cannot concur. "To examine into accusations against persons charged with crime, and, if they see just cause, to find bills of indictment against them, and to act in such public matters as may be brought before them, such as inquiries into misfeasance in office, prevalence of crime, and public nuisances," are among the recognized duties of grand juries (Webster's Dictionary), sometimes neglected, it is true, but which, when faithfully performed, deserve public commendation.

Upon the whole case, we are of opinion that there is no error disclosed by the record, and the judgment of the corporation court is affirmed.

*Affirmed.*